UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINATTI DIVISION

*ELECTRONICALLY FILED*

| | |
|---|---|
| SCHOENING INVESTMENT, LP, individually and on behalf of others similarly situated, | Plaintiff |
| v. | Civil Action No. 24-cv-137 |
| THE CINCINNATI CASUALTY COMPANY | Defendant |

\* \* \* \* \*

# CLASS ACTION COMPLAINT

COMES NOW Schoening Investment, LP, individually and on behalf of others similarly situated ("Plaintiff"), for its Complaint against The Cincinnati Casualty Company ("Defendant"), states and alleges the following:

## OVERVIEW OF CLAIMS

1. This is a class action case arising out of a dispute between policyholders and their property insurer, Defendant. The seminal legal dispute before the Court is whether Defendant's standard form policy language allows for depreciation on partial losses in which Defendant's estimate and claim payment were based on proposed *repairs* to damaged insured structures. Specifically, under the terms of Defendant's policy as interpreted by the Kentucky Supreme Court in *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000) (hereafter the "*Farmland decision"),* the seminal question is whether Defendant may subtract depreciation on partial structural property losses when it calculates its actual cash value ("ACV") payment obligations?

2. This lawsuit does not concern or in any way involve total losses in which Defendant's ACV payment represented the cost of *replacement* of the entire structure. Instead, this lawsuit only concerns partial structural losses in which Defendant's ACV payment was for a proposed *repair*.

3. In the *Farmland* decision, the building at issue was insured by an insurance policy containing the following terms:

> I. PROPERTY INSURANCE
> . . .
>
> C. LOSS SETTLEMENT CLAUSE
>
> 1. Real Property and Business Property. We will determine the value of covered property in the event of loss or damage at the actual cash value as of the time of the loss or damage. We will not pay more for loss or damage than the least of:
> . . .
>
> (b) The cost to repair or replace the lost or damaged property with similar property intended to perform the same function when replacement with identical property is impossible or unnecessary;
> . . .
>
> (d) The value of the damaged property.
>
> VI. POLICY DEFINITIONS THE FOLLOWING DEFINITIONS ARE MADE A PART OF THIS POLICY
> . . .
>
> 2. Actual cash value means the replacement cost of the property damaged or destroyed at time of loss, less depreciation.

4. After a covered loss, the insurer in *Farmland* took the position that the structure could be repaired and that the ACV of the damaged property was the cost of *repair* less depreciation. This was in contrast to the insurance policy which stated that ACV was the cost of *replacement* less depreciation. The trial court determined that the plain language of the policy did not allow for a depreciation deduction on repairs, and ruled that if the repair cost was less than

2

replacement cost, the amount owed was equal to the repair cost with no deduction for depreciation. The Kentucky Supreme Court affirmed.

5. In response to the *Farmland* decision, most property insurers in Kentucky modified their standard form insurance policies to clarify that depreciation can be taken from repair costs (as opposed to only replacement costs) when calculating ACV payments on structural claims. Defendant did not.

6. On the other hand, Defendant chose to continue to use policy language nearly identical to that at issue in *Farmland*. Specifically, Defendant issued a policy to Plaintiff containing the following terms:

> SECTION A. COVERAGE
>
> . . .
>
> SECTION D. LOSS CONDITIONS
>
> . . .
>
> 4. Loss Payment
>
>    a. In the event of "loss" insured by this Coverage Part, at our options, we will either:
>    (1) Pay the value of lost or damaged property;
>    (2) Pay the cost of repairing or replacing the lost or damaged property;
>    (3) Take all or part of the property at an agreed or appraised value; or
>    (4) Repair, rebuild or replace the property with other property of like kind and quality.
>
>    We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of SECTION D. LOSS CONDITIONS, 7. Valuation or any applicable provision that amends or supercedes this valuation condition.
>    . . .
>
> 7. Valuation
>
> We will determine the value of Covered Property in the event of direct "loss" as follows:
>
> a. At "Actual Cash Value" as of the time of direct "loss" . . .

3

SECTION G. DEFINITIONS
1. "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

7. Here, after Plaintiff's covered loss, Defendant first determined that the damaged structure required repair as opposed to replacement. Defendant then calculated its ACV payment by deducting depreciation from its estimated repair cost. Defendant's deduction of depreciation is improper and in violation of its standard-form insurance policy and applicable law.

8. The issue presented is a question of law (whether depreciation may be deducted from repair costs, as opposed to replacement costs, under Defendant's standard policy form).

9. The Plaintiff does not dispute any of the repair cost values as determined Defendant. Rather, Plaintiff only contends that Defendant cannot withhold repair cost amounts as "depreciation," as those repair cost amounts were determined by the Defendant itself, from an ACV payment under the terms and conditions of Defendant's policy forms.

10. This lawsuit seeks to remedy Defendant's improper withholdings of depreciation when its estimates and ACV payments are based on repairs (as opposed to replacement of the structure as a whole). The suit is brought by Plaintiff both individually and on behalf of all others similarly situated.

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

11. Plaintiff Schoening Investment LP is a limited partnership. All individual members of the limited partnership is a citizen of Florida.

12. At all times relevant hereto, Plaintiff owned the commercial structure located at 4304 Poplar Level Road, Louisville, Kentucky 40213 (the "Insured Property").

13. Defendant The Cincinnati Casualty Company is organized under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

14. Defendant engaged in the contractual breaches described herein in a uniform matter and pursuant to a uniform policy.

15. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings contractual and declaratory relief claims on behalf of itself and a putative class of Defendant's property insurance policyholders who are similarly situated.

16. Defendant resides in the Southern District of Ohio. Defendant has insurance agents in the Southern District of Ohio for the conduct of its usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance.

17. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18. This Court has general personal jurisdiction over the Defendant.

## FACTS

**A.  Introduction and Scope of Lawsuit**

19. Defendant sells property insurance coverage for, *inter alia*, buildings in Arizona and Kentucky. This lawsuit only concerns first-party insurance coverage for structures.

20. This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

21. Further, this lawsuit only concerns claims wherein Defendant itself accepted coverage on partial (as opposed to total) losses and then Defendant chose to calculate its ACV payment obligations exclusively pursuant to the repair cost less depreciation methodology (as opposed to replacement cost for the entirety of the insured structure less depreciation).

5

**B.     Plaintiff's Insurance Policy and Loss**

22.     Plaintiff contracted with Defendant for an insurance policy providing coverage for certain losses to the Insured Property. The policy number was ECP 046 13 71 / EBA 046 13 71 (the "Policy").

23.     Plaintiff paid Defendant premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

24.     On or about March 18, 2022, the Insured Property suffered damage covered by the Policy. The damage to the Insured Property required repair.

25.     Plaintiff timely submitted a claim to Defendant requesting payment for the covered loss.

26.     Defendant determined the loss to the Insured Property was covered by the terms of the Policy, and that the damage could be repaired as opposed to complete replacement of the Insured Property.

27.     Defendant calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair the damage with new materials, and then Defendant subtracts the estimated depreciation.

28.     The Policy, and the other property forms at issue in this pleading, do not permit the withholding of depreciation on partial losses for which Defendant estimates a repair (as opposed to a replacement). In contrast with Plaintiff's Policy, certain policies of insurance issued by other insurers expressly allow for the depreciation from repair costs when calculating ACV payments.

**C.     Defendant's Calculation of Plaintiff's ACV Payment**

29.     In adjusting Plaintiff's claim, Defendant affirmatively and unilaterally chose to use a repair cost less depreciation methodology to calculate Plaintiff's losses and to make Plaintiff's

6

ACV payment. Defendant did not use any other methodology to calculate Plaintiff's ACV payment.

30. Defendant did not calculate any portion of Plaintiff's losses by reference to or analysis of any alleged increase or decrease in the market value of its building, or the market value of any portion of its property.

31. Defendant did not conduct an appraisal of Plaintiff's loss.

32. Defendant has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than by using the cost of repair. The only question is one of law, i.e., whether depreciation can be deducted from Defendants' estimated repair costs pursuant to the Policy and applicable law.

33. Soon after Plaintiff's loss, Defendant sent an adjuster to inspect the damage and estimate the cost of repair.

34. Defendant used a commercially-available computer software to calculate its payment obligations to Plaintiff. The software used to calculate the payment to Plaintiff is called Xactimate®.

35. As set forth in the written Xactimate® estimate provided to Plaintiff, Defendant determined that Plaintiff had suffered covered losses to its property. The Xactimate® estimate generated by Defendant included the estimated cost of materials and labor required to complete the repairs.

36. In calculating its payment obligations to Plaintiffs, Defendant utilized Xactimate® to subtract depreciation from the calculated repair cost.

37. Plaintiff was underpaid on its claim and deprived of the use of its money from the time it should have received full payment until the date it actually recovered (or does actually recover) the wrongfully withheld amounts, as more fully described below.

**D.  Defendant's Practice Of Withholding Depreciation From Repair Costs**

38. For Plaintiff and putative class members, Defendant used Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of repairing damaged property and is also used to calculate depreciation.

39. The only methodology used by Xactimate® to calculate ACV payments for structural damage is to first calculate repair costs.

40. Defendant unfairly manipulates Xactimate® to withhold depreciation from repair costs when calculating ACV payments.

41. Xactimate® generates its estimate prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

42. When adjusting property insurance claims with Xactimate®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

43. The Xactimate® software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled, and then depreciation is applied.

44. Xactimate® can be manipulated to withhold depreciation from ACV payments by simply checking or unchecking certain boxes concerning depreciation. The user has full control over whether depreciation is applied, or not.

8

45. When Defendant calculated Plaintiff's claim payment, Defendant withheld depreciation from its estimated repair cost.

46. Defendant's withholding of depreciation resulted in Plaintiff receiving payment in an amount less than what it was entitled to receive under its Policy. Defendant breached its obligations under the Policy by improperly withholding depreciation from its estimated repair costs when calculating the ACV amount due.

47. The amount of depreciation withheld is expressly stated on the Xactimate® estimate provided to Plaintiff by Defendant.

48. At times, Defendant uses other estimating software similar in functionality to Xactimate® to calculate repair costs and depreciation.

49. Under Defendant's standard policy forms issued to Plaintiff and similarly situated class members, Defendant may not withhold depreciation from repair costs when calculating an ACV payment.

50. Defendant's withholding of depreciation left Plaintiff under-indemnified and underpaid for its losses.

51. Defendant materially breached its duty to indemnify Plaintiff by withholding depreciation from the repair costs calculated by Defendant, thereby paying Plaintiff less than it was entitled to receive, including but not limited to depriving Plaintiff of the time use of money resulting from the period of withholding in the form of prejudgment interest.

52. Defendant has failed to make any good faith attempts to settle Plaintiff's and other proposed class members' ACV claims for the amounts at issue herein.

## AMOUNT IN CONTROVERSY

53. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

54. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of itself and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

55. The proposed class that Plaintiff seeks to represent is tentatively defined as follows:

All policyholders of The Cincinnati Casualty Company (or their lawful assignees) who made:

(1) a structural damage claim for property located in Arizona and Kentucky; and

(2) for which Defendant accepted coverage and then chose to calculate actual cash value exclusively pursuant to the repair cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which depreciation was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of depreciation causing the loss to drop below the applicable deductible.

The class period for the proposed class is the maximum time period as allowed by applicable law and the policy terms.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims arising under any policy forms that state that depreciation can be taken from repair costs (as opposed to only replacement costs) when calculating ACV payments on structural claims.

56. Plaintiff reserves the right to amend the definition of the proposed class through discovery, including the addition of policyholders from other states. The following persons are

expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

57. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under their policies. Certain amounts initially withheld as depreciation may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld depreciation still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

58. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes hundreds or thousands of people geographically dispersed across Arizona and Kentucky have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

59. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

60. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely and unlawfully withheld depreciation from repair cost as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect Defendant will continue to withhold depreciation from repair costs to reduce the amount it pays to its insureds under these policies absent this lawsuit.

61. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether the applicable policy language allows the withholding of depreciation from the repair costs as calculated by Defendant;

    b. Whether applicable policy language is ambiguous concerning the withholding of depreciation from the repair costs as calculated by Defendant, and if so, how the insurance policies should be interpreted;

    c. Whether the withholding of depreciation from the repair costs as calculated by Defendant breaches the applicable insurance policies;

    d. Whether Defendant has a custom and practice of withholding depreciation from repair costs in the calculation of ACV payments;

    e. Whether Plaintiff and members of the proposed class have been damaged as a result of the withholding of depreciation from repair costs as calculated by Defendant;

    f. Whether Defendant violated KRS 304.12-235 by withholding depreciation from repair costs in the calculation of ACV payments; and

    g. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

62. Plaintiff's claims are typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiff's claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class

and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

63. Plaintiff and its counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class it seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join them in seeking to be a class representative.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

65. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

66. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

67. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

68. Plaintiff may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

14

## COUNT I
## BREACH OF CONTRACT (Class Action)

69. Plaintiff restates and incorporates by reference all preceding allegations.

70. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

71. These policies of insurance are binding contracts under applicable law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

72. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the impropriety of withholding depreciation from repairs costs as calculated by Defendant.

73. In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policies.

74. By issuing ACV payments to Plaintiff and putative class members, Defendant acknowledged that Plaintiff and putative class members had furnished to Defendant notice and proof of claim in the substance and form required by the terms of the respective policy. Alternatively, by issuing ACV payments to Plaintiff and putative class members, Defendant affirmatively waived any alleged notice and proof of claim requirements related to the issued ACV payment.

75. All conditions precedent have occurred or been performed by the Plaintiff.

76. All conditions precedent have occurred or been performed by the putative class.

77. Defendant breached its contractual duties to pay Plaintiff and members of the proposed class the amounts owed pursuant to their insurance policies by unlawfully withholding depreciation from repair costs as described herein.

78. In this breach of contract count, Plaintiff and the putative class do not dispute the repair costs calculated by Defendant. Rather, Plaintiff and the putative class only dispute whether Defendant may withhold depreciation from those repair costs under the terms of Defendant's form insurance policies and applicable law.

79. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

80. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld as depreciation from their claim payments, including prejudgment interest for all periods of withholding as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF (Class Action)

81. Plaintiff restates and incorporates by reference all preceding allegations.

82. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

83. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

84. Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

85. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts prohibit the withholding of depreciation from repair costs as calculated by Defendant when adjusting partial structural losses, as described herein.

86. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

87. Plaintiff and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant's withholding of depreciation from repair costs, as described herein, is contrary to and breaches the insurance policies issued to Plaintiff and members of the putative class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as depreciation as described herein, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award Plaintiff and members of the proposed class with structural damage losses occurring in Kentucky additional damages in the amount of twelve percent (12%) interest per annum of the depreciation withheld from repair costs pursuant to KRS 304.12-235;

7. Award attorney's fees, costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

s/ *Stephen G. Whetstone*
Stephen G. Whetstone
WHETSTONE LEGAL LLC
Post Office Box 6
2 N. Main St., Unit 2
Thornville, OH 43076
P: 740-785-7730
F: 740-205-8898
E: steve@whetstonelegal.com

**Attorney for Plaintiff and
Putative Class Representative**

18